812 A.2d 1016

**Wendell Daniel ANDERSON**

v.

**STATE of Maryland.**

**No. 22 Sept. Term, 2002.**

Court of Appeals of Maryland.

Dec. 16, 2002.

Thomas S. Hood, Towson, for petitioner.

Kathryn Grill Graeff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued Before: BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

In this case, we must decide whether petitioner, a high school teacher, was a person with responsibility for supervision of a child, within the meaning of Md.Code Ann., Art. 27, § 35C(b) (2001 Supp.).[1] We shall hold that under the circumstances presented herein, the evidence was sufficient to establish that petitioner was a person having temporary responsibility for the supervision of a child within the contemplation of the statute.

Wendell Daniel Anderson, petitioner, a high school teacher, was convicted of child abuse and several related sexual offenses.[2] The Court of Special Appeals affirmed the convictions, *Anderson v. State,* 142 Md.App. 498, 790 A.2d 732 (2002), and we granted Anderson's petition for writ of certiorari. *Anderson v. State,* 369 Md. 178, 798 A.2d 551 (2002). We shall affirm the Court of Special Appeals.

---

**1.** Unless otherwise noted, all future references are to Md.Code Ann., Art. 27, § 35C(b) (2001 Supp.).

**2.** In addition to the child abuse count (count 1), petitioner was convicted of third degree sexual offense (count 2), attempted third degree sexual offense (count 3), fourth degree sexual offense (count 4), and attempted fourth degree sexual offense (count 5). The Circuit Court merged counts 3 and 4 with count 2 and count 5 with count 1 for sentencing purposes.

## I. *Background*

The victim, a fourteen-year-old girl, was a ninth grade student at Kenwood High School. She met petitioner, a math teacher at the school, through one of her teachers, Ms. Riggs. The victim was not in any of petitioner's classes or a participant in the extracurricular activities he ran. Petitioner would sometimes see her in the halls of the school, however, and would come into Ms. Riggs' classroom where the victim helped out after school, occasionally helping the victim with math problems. Petitioner also drove the victim home from school two or three times.

At trial, petitioner testified that he knew the victim had developed a crush on him. During the year, he talked to her about her relationships with boys, discussed with her his own interest in a romantic relationship with Ms. Riggs, and criticized her for her provocative choice of clothing. Petitioner testified that when the victim confronted him about her affections for him, he told her "sometime in the future there may be a chance, but right now you are way too young."

The sexual encounter between petitioner and the victim occurred on the last day of the school year, when petitioner gave the victim a ride home from school. Although he had driven her home from school on prior occasions, the victim's mother was unaware of this practice. The victim's mother testified that she believed that her daughter either took the bus, got a ride home from a friend, or called her for a ride. She testified that she entrusted Kenwood High School with the care of her daughter, but had never asked any of the teachers explicitly to be responsible for her supervision after school.

The high school principal testified about the supervisory responsibilities of the teachers. She stated that all teachers "are given a set of five classes to teach and they are expected to do hall duty, supervision hall duty between changes of classes. They generally get one hour a day and they are given chaperone duties after school." Asked about responsibility for "[a]ny scenario on school campus," the principal

stated that all teachers "are responsible to assure the safety of the students." On cross-examination, however, the principal agreed that teachers have no responsibility for students they meet after the school day ends, not in connection with an academic activity.

The evening before the last day of the school year, the victim phoned petitioner to ask him for a ride home from school the following day. The Court of Special Appeals summarized the events of the following day as follows:

"On June 9, 2000, the last day of the school year, the school day ended at noon. That day, [the victim] 'stayed after with Ms. Riggs to help her with her room.' While she was walking in the hallway with Ms. Riggs and her daughter, whom Ms. Riggs had brought to school that day, [petitioner] approached and invited them to go to lunch with him. They then left school property with [petitioner], in his car, and had lunch at a nearby McDonald's restaurant. About a half hour later, all four of them returned to school in [petitioner's] car and [the victim] resumed 'help[ing] Ms. Riggs with her room and her daughter.'" When [petitioner] asked [the victim] if she wanted a ride home, she accepted his offer. Sometime after 2 p.m., [petitioner] and [the victim] left the school in [petitioner's] car. While driving [the victim] home, [petitioner] asked her if she wanted to play a game of pool at his house; she replied that she did. [Petitioner] then drove [the victim] to his house. "

*Anderson,* 142 Md.App. at 503–04, 790 A.2d 732 (footnote omitted).

In the course of the ensuing investigation, Baltimore County Police Detective Joseph Donahue recorded a telephone conversation between petitioner and the victim. According to his testimony, he believed he was investigating a case of child abuse. Pursuant to the Maryland Wiretapping and Electronic Surveillance Act, Md.Code (1998 Repl.Vol., 2000 Supp.), §§ 10–401 *et seq.,* Courts and Judicial Proceedings Article, the officer obtained consent to record the conversation from the victim. The officer did not obtain petitioner's consent to

record the conversation, nor did he have a court order. Prior to trial, petitioner moved to suppress the taped recording of this conversation and to sever the child abuse charge from the sexual offense charges. Both of these motions were denied.

Petitioner was indicted by the Grand Jury for Baltimore County and proceeded to trial before the court. He maintained that he could not be convicted of child abuse because he did not have the requisite statutory responsibility for the care of a child. He also denied any sexual contact. The trial judge found that petitioner fit within the statutory definition of child abuse and believed the testimony of the victim. He was convicted and sentenced to a term of incarceration.

Petitioner noted a timely appeal to the Court of Special Appeals. The intermediate appellate court noted that the "principal issue presented by this appeal is whether consensual sexual intercourse can constitute 'child abuse' under Maryland law." Judge Peter Krauser, writing for an unanimous panel, noted:

"Because we find that a parent impliedly consents to a teacher taking all reasonable measures to assure the safe return of his or her child from school, including personally driving that child home; because [petitioner] assumed that responsibility when he agreed to drive the child home; because the events leading up to this unfortunate occurrence were set in motion on school property; and because, at the time of the offense, there had been no temporal break in the teacher and student relationship that existed between [petitioner] and the victim, we shall affirm [petitioner's] conviction for child abuse."

*Anderson*, 142 Md.App. at 501, 790 A.2d at 734–35. This Court granted Anderson's petition for writ of certiorari. *Anderson v. State*, 369 Md. 178, 798 A.2d 551 (2002).

## II. *Child Abuse*

Petitioner contends before this Court that the evidence was insufficient to sustain the charge of child abuse because a necessary element under the statute was missing, namely, that

he was either a parent, household or family member or other person who has permanent or temporary care or custody or responsibility for supervision of a child. Petitioner acknowledges that a teacher is responsible for the supervision of a child at those times and places where he or she is acting as a teacher and that when the teacher is at school or is with a student off school premises for a school related activity, he "has responsibility for supervision as part of his job." He recognizes that these circumstances would fit within the notion of implied mutual consent between the parent and the school authorities. He argues, conversely, that when a teacher is with a student off school grounds, for a non-school related activity, the implied consent rationale is inapplicable and that once a teacher is no longer acting as a teacher, he or she does not have responsibility to supervise the student.

█ Article 27, § 35C(b) states that "[a] parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member who causes abuse to the child is guilty of a felony...." Whether a teacher has responsibility for the supervision of a child, i.e., a student under eighteen years of age, is a factual question, dependent upon the particular circumstances.

It is uncontested that the act of sexual intercourse by an adult with a fourteen-year-old girl qualifies as "abuse" under the statute. Although petitioner was neither a parent nor household or family member of the victim, the Circuit Court found that petitioner had "responsibility for the supervision" of the victim at the time of the alleged misconduct. The Court of Special Appeals agreed, and held the evidence to be sufficient to support the conviction. We agree.

█ Petitioner contests the sufficiency of the evidence supporting the conviction for child abuse. The standard for determining whether there is sufficient evidence to support a conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." *Burch v. State,* 346 Md. 253, 272, 696 A.2d 443, 452–53 (1997); *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994). Whether a person has responsibility for the supervision of a minor child in contemplation of Art. 27, § 35C, is a question of fact for the jury. *See Newman v. State,* 65 Md.App. 85, 99, 499 A.2d 492 (1985).

The courts of this State have had several occasions to consider the class of persons to whom the child abuse statute applies. *See e.g., Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979); *Bowers v. State,* 283 Md. 115, 389 A.2d 341 (1978); *Tapscott v. State,* 106 Md.App. 109, 664 A.2d 42 (1995); *Brackins v. State,* 84 Md.App. 157, 578 A.2d 300 (1990); *Newman,* 65 Md.App. 85, 499 A.2d 492. *See also,* 82 Op. Md. Att'y Gen. (1997).

In *Pope,* we addressed the statutory language of "responsibility for the supervision of a child." Judge Orth, writing for the Court, pointed out that the phrase "responsibility for the supervision" under § 35C is not limited solely to a person standing in loco parentis to a child and may include others. We said:

> "The child abuse statute speaks in terms of a person who 'has' responsibility for the supervision of a minor child. It does not prescribe how such responsibility attaches or what 'responsibility' and 'supervision' encompass. A doubt or ambiguity exists as to the exact reach of the statute's provision with respect to 'has responsibility for the supervision of,' justifying application of the principle that permits courts in such circumstances to ascertain and give effect to the real intention of the Legislature. *Bowers* equates 'permanent or temporary care or custody' with 'in loco parentis,' but 'responsibility for the supervision of' is not bound by certain of the strictures required for one to stand in place of or instead of the parent."

*Id.* at 322, 396 A.2d at 1063 (citations omitted).

Discussing the meaning of the word "responsibility," we said:

" 'Responsibility' in its common and generally accepted meaning denotes 'accountability,' and 'supervision' emphasizes broad authority to oversee with the powers of direction and decision.... Absent a court order or award by some appropriate proceeding pursuant to statutory authority, we think it to be self-evident that responsibility for supervision of a minor child may be obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming responsibility. In other words, a parent may not impose responsibility for the supervision of his or her minor child on a third person unless that person accepts the responsibility, and a third person may not assume such responsibility unless the parent grants it."

*Id.* at 323–24, 396 A.2d at 1063. We went on to provide examples of persons who may come within the ambit of the statute. We said:

"So it is that a baby sitter temporarily has responsibility for the supervision of a child. The parents grant the responsibility for the period they are not at home, and the sitter accepts it. And it is by mutual consent that a school teacher has responsibility for the supervision of children in connection with his academic duties."

*Id.* at 324, 396 A.2d at 1063–64. We concluded that:

"[O]nce responsibility for the supervision of a minor child has been placed in a third person, it may be terminated unilaterally by a parent by resuming responsibility, expressly or by conduct.... But, of course, the third person in whom responsibility has been placed is not free to relinquish that responsibility without the knowledge of the parent."

*Id.,* 396 A.2d at 1064.

Petitioner acknowledges that he had responsibility for the supervision of the victim, by mutual consent, while they were at school or were involved in school related activities. Relying on an opinion letter of the Attorney General, 82 Att'y Gen. Op. —— (1997) [Opinion No. 97–017 (Aug. 19, 1997) ], he argues,

however, that outside of such academic duties, there is no mutual consent.

Petitioner argues that the mutual, implied consent which existed as a result of his position as a teacher ended when he and the victim left the school and thus, as there was no mutual consent that he drive the victim home, he did not have responsibility for her supervision. The Court of Special Appeals rejected this argument, as do we. We agree with Judge Krauser's analysis.

"[The victim's] mother may not have known that [petitioner] had assumed the task of driving her home from school, but, from that fact, it does not follow that she did not impliedly consent to his doing so. Indeed, it is absurd to suggest that when a parent entrusts her child to a school that that parent does not impliedly consent to any reasonable assistance that a teacher may provide to assure the child's return home from school. In other words, it may be reasonably assumed by both parent and teacher that a parent impliedly consents to all reasonable measures taken by a teacher to assure the safe return of the child from school, including personally driving that child home.... Once a teacher assumes the task of personally transporting a child from school to home with the implied consent of the parent, he or she also assumes the responsibility of supervising that child.... Finally, there was no temporal break in the teacher and student relationship that existed between appellant and the child. Such a break, depending on its length and nature, can interrupt the implied consent of the parent and dispel the teacher's duty to supervise. Had appellant and [the victim] met, for example, after they had parted, at a location unconnected with Kenwood High School, we might have reached a different result in this case. But that is not the case here. Indeed, appellant's offer to give the child a ride home was made on school premises while the child was still under the supervision of appellant. And the trip home began on school premises, where appellant and [the victim] got into his car. From the moment he extended his invitation until the time he and [the victim] had sexual inter-

course, she was never for long, if ever, either out of his sight or, for that matter, out from under his influence or control. At bottom, a teacher-student relationship is based on the student's trust and acquiescence to her teacher's authority. At no time was there a temporal break in that relationship so that we might conclude the relationship inducing both trust and acquiescence to authority have at least temporally ended."

*Id.* at 509–10, 790 A.2d at 739.

Petitioner did not initiate the meeting with the victim at a park or shopping center near the school. Petitioner, as a teacher, met with the student during school hours and made the plans to leave the school with her. Petitioner had assisted the victim academically, and acknowledged his responsibility for her supervision at school. The principal of the school acknowledged that for "[a]ny scenario on school campus, even if that teacher is not on hall duty or even if that student is not a member of their class," the teacher is responsible "to assure the safety of the students." This was the understanding of the victim's mother, who entrusted her daughter to Kenwood High School. She entrusted her not to a particular teacher for a particular activity, but to the school as a whole for the entirety of the school day.

The victim's mother terminated the responsibility of the school, and by extension the teachers, on the days she came to get her daughter or gave her daughter permission to ride the bus. On the day in question, however, the mother never resumed responsibility expressly or by conduct. Instead, the responsibility remained in the teacher who held it and voluntarily extended it through his offer of transportation. He took it upon himself to transport her home from school and made those arrangements with her at school and during school hours.[3] Petitioner's "official" supervisory interactions with

---

3. As previously stated, the victim phoned petitioner the night before to ask for a ride home. *Supra* at 289, 812 A.2d at 1019. Although the victim's testimony is unclear on this point, petitioner testified that on

the victim that began at school, his transportation of her that was initiated at school, and his sexual involvement with her "together constituted an indivisible, ongoing relationship." *Doe v. Taylor*, 15 F.3d 443, 461 (5th Cir.1994) (Higginbotham, J., concurring).

Petitioner asserts that "at the time of the alleged sexual contact, Petitioner was not with the child on school grounds or with the child off school grounds for an activity related to academic or a school related extracurricular activity." It goes without saying that any conduct that amounts to child abuse will never be an "academic activity." A teacher cannot argue that his conduct is not child abuse because his seduction of a student was not consented to by the parent. It is the school related activity immediately connected to the abuse, in this case the transportation of the student home from school, that provides the basis of supervision. Our view is consistent with the opinion expressed in the letter of the Attorney General. In the letter opinion, the Attorney General stated that

> "responsibility . . . could also exist when the parent consents to the child's accompanying the teacher off school premises. In all these situations, a jury could find, at the least, an implicit mutual agreement to transfer 'responsibility for supervision' to the teacher and the teacher's acceptance of it."

82 Att'y Gen. op. No. 97–017, at 111.

A similar issue was addressed by the Missouri Court of Appeals in *State v. Pasteur*, 9 S.W.3d 689 (Mo.Ct.App.1999). A teacher was convicted of sexual offenses against two students, one of which occurred after a school play, when the teacher offered to drive a student home. As in the case *sub judice*, the student accepted the ride and the teacher made a

---

the following day, he sought out the victim at school and asked her if she still needed a ride home. Petitioner testified:

"I then went to Ms. Riggs' room to see if [the victim] still needed the ride. [Ms. Riggs and the victim] were not there. I wandered around the building for a while trying to find them. They were in an alcove on the first floor. When I found them, I said I am leaving now, do you still need a ride home. [The victim] said yes."

detour to his own home. Sexual contact occurred during the ride. The defendant challenged the evidence that there existed a custodial relationship between himself and the two victims. The court first described the scope of the student-teacher relationship:

"Teachers are undeniably charged with the 'care and custody' of students. When parents send their child to school, they entrust the teacher with that child's well-being. . . . [A] teacher's duty of care and custody extends beyond the confines on the schoolyard. . . . By virtue of Defendant's position, he was able to exert influence upon [the victim], not only within the confines of the school, but outside of it as well."

*Id.* at 697. The court concluded that not only was there evidence of a custodial position, but that the conduct occurred "while Defendant and [the victim] were engaged in school related activities." *Id.* at 698.

In this case, the Circuit Court found that petitioner's conduct, both on and off school grounds, was within the scope of his role as a teacher. We hold that the evidence was sufficient for the trier of fact to find beyond a reasonable doubt that petitioner was a person who had responsibility for the supervision of a minor child as contemplated by Art. 27, § 35C.

### III. *Suppression of Taped Conversation*

We next turn to petitioner's assertion that the Circuit Court's denial of his motion to suppress the taped conversation was error. Section 10–402(c)(2) of the Courts and Judicial Proceedings Article provides, in pertinent part, as follows:

"[i]t is lawful under this subtitle for an investigative or law enforcement officer acting in a criminal investigation . . . to intercept a wire, oral, or electronic communication in order to provide evidence of the commission of the offenses of . . . child abuse . . . where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception."

Md.Code Ann., Cts. & Jud. Proc. Art., § 10–402(c)(2) (2001 Supp.).

It is undisputed that the victim and her mother consented to the electronic monitoring of the telephone call between petitioner and the victim. Petitioner contends that the officer knew or should have known that petitioner was not within the class of persons covered by the child abuse statute and, therefore, the taping was illegal under Maryland law and should have been suppressed. He concludes that the Circuit Court abused its discretion in finding that the officer, in good faith, believed he was investigating the crime of child abuse. Petitioner's primary argument is that the Circuit Court applied the wrong standard in assessing whether the officer was acting in a criminal investigation of child abuse and that the test is not whether the officer had a good faith belief that he was investigating child abuse, but rather whether the officer had a reasonable basis for his suspicion that petitioner had committed child abuse.

The officer clearly had reasonable grounds to believe that petitioner had committed child abuse.[4] His recording was lawful and the motion to suppress properly was denied.

---

4. We need not address the question of whether a standard of reasonable suspicion, or good faith, is sufficient, because in this case we find that the officer had reasonable grounds to believe he was investigating the crime of child abuse. The Court of Special Appeals noted that an interception is lawful so long as the officer has reasonable suspicion to warrant an investigation of one of the statutorily enumerated crimes. *See Anderson,* 142 Md.App. at 517, 790 A.2d at 743 (citing *Fearnow v. Chesapeake & Potomac Telephone,* 104 Md.App. 1, 24 n. 21, 655 A.2d 1, 12 n. 21 (1995), *rev'd on other grounds,* 342 Md. 363, 676 A.2d 65 (1996)). *See also, Commonwealth v. Thorpe,* 384 Mass. 271, 424 N.E.2d 250, 255–56 (Mass.1981) (rejecting both good faith and probable cause standards, and stating that "[a]t the minimum, the Commonwealth should be required to show that the decision to intercept was made on the basis of a reasonable suspicion that interception would disclose or lead to evidence of a designated offense"). *See generally,* Eric H. Miller, Annotation, *Permissible Warrantless Surveillance, Under State Communications Interception Statute, by State or Local Law Enforcement Officer or One Acting in Concert With Officer,* 27 A.L.R.4th 449 (1984).

### IV. *Severance of Charges*

Finally, petitioner argues that the trial court erred in failing to sever the counts of child abuse from the sexual offense charges.[5] He argues that because he is not within the class of persons who could have been convicted of child abuse, had the child abuse count been severed for trial, and further, had he been found not guilty of child abuse, the tape recording of the telephone conversation would not have been admissible at trial on the sexual offense charges.

The Court of Special Appeals held that because Anderson's conduct constituted child abuse, his argument that he was wrongfully denied a severance was moot. We agree.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.*

BELL, C.J., and ELDRIDGE, J. and WILNER, J., dissent.

Dissenting Opinion by BELL, C.J. in which ELDRIDGE and WILNER, JJ. join.

I disagree with the majority's determination that the evidence is sufficient for the trier of fact to find beyond a reasonable doubt that Wendell Daniel Anderson, the petitioner, is a person who had responsibility for the supervision of a minor child under the child abuse statute. I cannot agree with the majority's overly broad application of the child abuse statute and, consequently, it is my contention that the facts in the case *sub judice* do not establish a sufficient nexus between the teacher and the student in order to hold that the teacher was responsible for the supervision of the student.

The fundamental issue in this case is whether, pursuant to Maryland Code (1957, 1998 Replacement Volume) Article 27,

---

5.  Petitioner relies on Maryland Rule 4–253 for his argument that the court erred. Rule 4–253(c) provides as follows:

    "If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires."

§ 35C (b) of the child abuse statute [1], Wendell Daniel Anderson, the petitioner, who was not the victim's teacher, was nevertheless, by virtue of being a teacher at the school she attended and agreeing to give her a ride home from school, a person who had, at the time the sexual activity occurred, "responsibility for supervision of the child" alleged to have been abused. The Circuit Court for Baltimore County answered the question in the affirmative, finding that the petitioner did have responsibility for supervision of the minor child victim.

The Court of Special Appeals agreed and, thus, affirmed the judgment of the trial court. *Anderson v. State*, 142 Md.App. 498, 790 A.2d 732 (2002). It held that there was sufficient evidence to support a finding of implied consent by the victim's mother to the petitioner's supervision of the victim and, therefore, child abuse. *Id.* at 515, 790 A.2d at 742. In so holding, the intermediate appellate court determined that

"there was a special relationship between the victim and her abuser: the relationship of trust and responsibility that exists between student and teacher. It is that relationship which induces parents to consent, expressly and impliedly, to all reasonable actions taken by teachers to assure the safe return of their children, including providing, if necessary, the means by which this objective will be achieved."

*Id.* Rationalizing that holding, it stated that "there is no dispute that every teacher of Kenwood High School had responsibility for supervising all of the students during and after school hours, and that they had the implied consent of

---

1. Maryland Code (1957, 1998 Replacement Volume, 2001 Cum.Supp.) Article 27, § 35C (b) provides:

    *"Violation constitutes felony; penalty; sentencing.*—(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member who causes abuse to the child is guilty of a felony...."
    By 2002 Md. Laws, ch. 26, this section was recodified as Maryland Code (2002) § 3–601(b)(1) of the Criminal Law Article. There is no substantive difference between the codifications. We shall refer, in future, to Article 27, § 35C, as it was in effect when the events giving rise to this appeal occurred.

the parents to do so." *Id.* at 508, 790 A.2d at 738. From the premise that "mutual implied consent to supervise Cindy at school existed by virtue of appellant's status as a teacher at Cindy's high school," it concluded, "[o]nce a teacher assumes the task of personally transporting a child from school to home with the implied consent of the child's parent, he or she also assumes the responsibility of supervising that child." *Id.* at 508–09, 790 A.2d at 738–39. That responsibility continues, the court instructed, until the teacher is relieved by the parent or there has been a temporal break in the teacher/student relationship, *id.* at 510–13, 790 A.2d at 739–41, neither of which occurred in the instant case.

For the former, the Court of Special Appeals relied on our observation in *Pope v. State,* 284 Md. 309, 324, 396 A.2d 1054, 1064 (1979), that once responsibility for the supervision of a child has been assumed, a "third person ... is not free to relinquish that responsibility without the knowledge of the parent .... and leave the children to their own devices." As to the latter, the court opined, without citation of authority:

"[T]here was no temporal break in the teacher and student relationship that existed between appellant and the child. Such a break, depending on its length and nature, can interrupt the implied consent of the parent and dispel the teacher's duty to supervise. Had appellant and Cindy met, for example, after they had parted, at a location unconnected with Kenwood High School, we might have reached a different result in this case. But that is not the case here. Indeed, appellant's offer to give the child a ride home was made on school premises while the child was still under the supervision of appellant. And the trip home began on school premises, where appellant and Cindy got into his car. From the moment he extended his invitation until the time he and Cindy had sexual intercourse, she was never for long, if ever, either out of his sight or, for that matter, out from under his influence or control. At bottom, a teacher-student relationship is based on the student's trust and acquiescence to her teacher's authority. At no time was there a temporal break in that relationship so that we might

conclude the relationship inducing both trust and acquiescence to authority had at least temporarily ended."
142 Md.App. at 509–10, 790 A.2d at 739.

Agreeing with the intermediate appellate court, the majority holds that the petitioner was properly charged and convicted of child abuse. To reach that conclusion, in view of the fact that the petitioner was not the victim's teacher, it had to rationalize a basis on which to conclude that he had responsibility for the victim's supervision, impliedly agreed to by the victim's mother. Critical to the majority's position, therefore, is the notion that the victim's mother "entrusted her [daughter] not to a particular teacher for a particular activity, but to the school as a whole for the entirety of the school day," *see* *Anderson v. State*, 372 Md. 285, 295, 812 A.2d 1016, 1022–23 (2002) a premise advanced and supported by the testimony of the principal. Proceeding on this premise, after observing that the petitioner previously had assisted the victim academically, and acknowledged his responsibility for her supervision at school, the majority opines that, rather than do so at a park or shopping center near the school, "[p]etitioner, as a teacher, met with the student during school hours and made the plans to leave the school with her." *Id.* It concludes, "it is the school in this case the transportation of the student home from school, that provides the basis of supervision." *Id.* at 296, 812 A.2d at 1023.

The majority rejects any argument that the responsibility for supervision had been terminated when the petitioner and the victim left school. In that regard, the majority asserts:
"On the day in question, however, the mother never resumed responsibility expressly or by conduct. Instead, the responsibility remained in the teacher who held it and voluntarily extended it through his offer of transportation. He took it upon himself to transport her home from school and made those arrangements with her at school and during school hours.[2] Petitioner's 'official' supervisory interactions

---

**2.** The complete accuracy of this statement is undermined by the majority's recognition that "[t]he evening before the last day of the school

with the victim that began at school, his transportation of her that was initiated at school, and his sexual involvement with her 'together constituted an indivisible, ongoing relationship.' "

*Id.* at 295, 812 A.2d at 1022–23, *quoting Doe v. Taylor,* 15 F.3d 443, 461 (5th Cir.1994) (Higginbotham, J.; concurring).[3]

### I.

The exact reach or limit of the phrase, "has responsibility for the supervision of," is the issue in this case, as it was in *Pope v. State,* 284 Md. 309, 396 A.2d 1054 (1979). In that case, this Court acknowledged that the child abuse statute addresses "a person who 'has' responsibility for the supervision of a minor child [but] does not prescribe how such responsibility attaches or what 'responsibility' and 'supervision' encompass," and, thus, that doubt or ambiguity exists as to the meaning of that phrase. *Id.* at 322, 396 A.2d at 1063. In ascertaining and giving effect to the real intention of the Legislature, we focused on the meaning of "responsibility" and "supervision." *Id.* at 323, 396 A.2d at 1063. Noting that common and generally accepted meaning of the former denotes "accounta-

---

year, the victim phoned petitioner to ask him for a ride home from school the following day." 372 Md. 285, 289, 812 A.2d 1016, 1019 (2002).

3. The context in which the quoted remark was made in *Doe v. Taylor,* 15 F.3d 443, 461 (5th Cir.1994) bears no similarity at all to this case. The full quote makes this point quite clearly:

"The next inquiry is whether the deprivation of liberty occurred under color of state law. I agree that it did. Stroud's official interactions with Doe and his sexual involvement with her together constituted an indivisible, ongoing relationship. The special attention Stroud gave Doe *as her teacher* afforded him the opportunity to exert his influence. He levered his authority to press upon Doe his sexual desires, while both on and off school grounds. He treated Doe differently than he treated other members of his class. He gave her good grades, required of her less work than other students, and allowed her to behave as she liked in his classroom. This manipulative course was an abuse of power conferred by the state. I am persuaded that Stroud acted under color of state law." (Emphasis in original).

bility" and that the latter "emphasizes broad authority to oversee with the powers of direction and decision," *id., quoting* American Heritage Dictionary of the English Language (1969); Webster's Third New International Dictionary (1968), the Court concluded, characterizing it as self-evident:

> "that responsibility for supervision of a minor child may be obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility. In other words, a parent may not impose responsibility for the supervision of his or her minor child on a third person unless that person accepts the responsibility, and a third person may not assume such responsibility unless the parent grants it."

*Id.* at 323–24, 396 A.2d at 1063. By way of example, we stated:

> "So it is that a baby sitter temporarily has responsibility for the supervision of a child; the parents grant the responsibility for the period they are not at home, and the sitter accepts it. And it is by mutual consent that a school teacher has responsibility for the supervision of children in connection with his academic duties."

*Id.* at 324, 396 A.2d at 1063–64.

We sounded a note of caution. First, we noted that, while a third person's responsibility for the supervision of a minor child may be terminated unilaterally, by the parent resuming the responsibility, expressly or by conduct, the third person in whom responsibility has been placed may relinquish that responsibility only with the knowledge of the parent. *Id.* at 324, 396 A.2d at 1064. We illustrated the point by pointing out that "a sitter may not simply walk away in the absence of the parents and leave the children to their own devices." *Id.* We were also concerned that "responsibility for the supervision" not be interpreted without regard to the consent criteria or too broadly. Thus, recognizing that the law does not impose on any individual a legal obligation to care for, or look

after, the welfare of a stranger, adult or child, without a special relationship, we said:

"In the face of this status of the law we cannot reasonably conclude that the Legislature, in bringing a person responsible for the supervision of a child within the ambit of the child abuse law, intended that such responsibility attach without the consent criteria we have set out. Were it otherwise, the consequences would go far beyond the legislative intent. For example, a person taking a lost child into his home to attempt to find its parents could be said to be responsible for that child's supervision. Or a person who allows his neighbor's children to play in his yard, keeping a watchful eye on their activities to prevent them from falling into harm, could be held responsible for the children's supervision. Or a person performing functions of a maternal nature from concern for the welfare, comfort or health of a child, or protecting it from danger because of a sense of moral obligation, may come within the reach of the act. In none of these situations would there be an intent to grant or assume the responsibility contemplated by the child abuse statute, and it would be incongruous indeed to subject such persons to possible criminal prosecution."

*Id.* at 325, 396 A.2d at 1064.

Our holding was applied by the Attorney General in responding to an inquiry from the State's Attorney for Montgomery County. *See* 82 Md. Op. Atty. Gen. 107 (1997). The question on which the Attorney General's opinion was sought was "whether a teacher who has sexual contact with a student after school hours and off the school premises may be considered a person with 'permanent or temporary custody or responsibility for supervision' of the student and thus may be charged with child abuse under Article 27, § 35C of the Maryland Code." The Attorney General opined:

"Article 27, § 35C applies, even after school hours or off the school premises, to a teacher who has 'custody or responsibility for supervision of the child.' A teacher may be considered responsible for the supervision of the student, and therefore subject to Article 27, § 35C, if the teacher is

with the student in connection with an activity related to the school's academic extra-curricular program or otherwise as a result of permission from the child's parents for the child to accompany the teacher. Article 27, § 35C does not apply, however, if the teacher is with the student under circumstances unrelated to school programs or parental permission. In other words, as § 35C is currently drafted and applied by the courts, the fact that a teacher is with a student is alone insufficient to satisfy the 'custody or ... supervision' component of the child abuse law.

82 Op. Atty. Gen., at 107.

The Attorney General applied the mutual consent requirement enunciated in *Pope* and thus determined that whether the sexual contact occurs on or off school premises is not dispositive; rather it is whether "the parent has impliedly consented to transfer 'responsibility for supervision' of the child to the teacher and the teacher has accepted that responsibility 'in connection with [the teacher's] academic duties," reviewing, in the process, the other Maryland cases either applying *Pope* or interpreting the applicable portion of the child abuse statute. 82 Op. Atty. Gen., at 110, *quoting, Pope,* at 323, 396 A.2d at 1063. *See Newman v. State,* 65 Md.App. 85, 99, 499 A.2d 492, 499 (1985) (evidence that the boyfriend of the mother of the child for whom the victim babysat transported the victim to and from her babysitting job, which on several occasions was done in his home, paid her for babysitting and, from the victim's mother, that he "was to take care of [the victim] and insure her safety to and from the house" sufficient to establish responsibility and supervision); *Tapscott v. State,* 106 Md.App. 109, 141–42, 664 A.2d 42, 58 (1995) (child's half-uncle could be found "responsible for supervision" where child's mother entrusted him with the child's care on numerous occasions and considered him to be child's supervisor whenever he and child were together, and the half-uncle agreed to pick the child up after work and spend the night at his house); *Zaal v. State,* 85 Md.App. 430, 436, 584 A.2d 119, 122 (1991), *rev'd on other grounds,* 326 Md. 54, 602 A.2d 1247

(1992) ("responsibility for supervision" inferable from fact that victim's mother gave permission to the grandfather for the child to accompany grandfather and he took child from the home); *Brackins v. State*, 84 Md.App. 157, 164, 578 A.2d 300, 303–04 (1990) (stepfather could be charged with exploitation under the child abuse statute where he was married to the victim's mother, resided in the same home, and was responsible for the victim's care while the mother was working).

I agree with the Attorney General's interpretation of *Pope* and his application of the mutual consent test. To establish the "responsibility for supervision" necessary to sustain a conviction for child abuse, it is insufficient to prove that one of the parties engaging in the prohibited conduct is a teacher and the other a student; "the fact that a teacher is with a student is alone insufficient to satisfy the 'custody or . . . supervision' component of the child abuse law." 82 Op. Atty. Gen., at. 107. There must be a nexus between the teacher's profession and his or her interaction with the student. Were it otherwise, mere status, of teacher and student, without regard to the nature or place of the interaction between them, i.e., a special relationship, or evidence that the teacher accepted the responsibility, would be enough to establish that the teacher had the requisite responsibility for supervision. That, of course, is inconsistent with the fact that the law does not impose any duty on a teacher, or any other professional, to look after another when there is no special relationship requiring that to be done. *See Pope*, 284 Md. at 324, 396 A.2d at 1064.

This Court, in *Pope*, identified the required nexus. Although articulated by way of an example, rather than as the holding in that case, we expressly and deliberately focused on the connection with the teacher's academic duties as evidence of his or her consent to taking responsibility for the supervision of children not his or her own. *Id.* at 324, 396 A.2d at 1063–64. Had we intended the trigger to be something else, or broader, we easily could have, and, I submit, would have, either explicitly said so or refrained from using the phrase,

"academic duties."[4] The cases since *Pope* are consistent. *See Newman, Tapscott, Zaal,* and *Brackins, all supra.* As we have seen, in each of them, there was more than a mere relationship, familial or general, between the person found to be responsible and the victim, there was, in fact, evidence that the person had indeed accepted the responsibility. Accordingly, the Attorney General appropriately used the "academic duties" yardstick to determine whether criminal liability attached for child abuse, wherever the conduct occurred, on the school premises or off.

There is no evidence in this case that supports the petitioner's conviction of child abuse. In fact, the opposite is true, the undisputed evidence negates a finding of child abuse, since that evidence does not establish the requirement of responsibility for supervision, as prescribed by Article 27, § 35C (b) and defined by *Pope.* It is undisputed, which the majority acknowledges and concedes,[5] that, although the petitioner was a teacher at the high school that the victim attended, he did not teach her and she did not participate in any of the clubs or other extracurricular activities in which the petitioner was involved. It is also undisputed that the day on which the sexual activities between the victim and the petitioner occurred was the last day of school and, furthermore, that the sexual involvement occurred after 2:00 p.m., well after 12:30 p.m., when the school year ended. The evidence was that the victim's mother neither asked the petitioner to drive her

---

4. Petitioner had assisted the victim academically, and acknowledged his responsibility for her supervision at school.

5. The majority detailed the extent of the petitioner's relationship with the victim at school: he "would sometimes see her in the halls of the school ... and would come into Ms. Riggs' classroom where the victim helped out after school, occasionally giving the victim help with math problems. Petitioner also drove the victim home from school two or three times." 372 Md. 285, 288, 812 A.2d 1016, 1018 (2002). Of course, these interactions, even during the school day, do not add up to "academic duties." On the contrary, they would seem to negate that characterization. In any event, volunteering to assist a student with math problems occasionally and driving her home two or three times do not give rise to a future duty to look after that student.

daughter home nor was aware that he would be doing so. Moreover, the victim's mother testified that she never asked the petitioner to be responsible for the supervision of her daughter either on the day when they engaged in sexual relations or at any other time. Indeed, and this is also undisputed, the victim did not stay after school to assist the petitioner and she did not do so; rather she stayed after school to assist another teacher and she, in fact, assisted that teacher. The petitioner's only interaction with the victim at school that day was to invite her and the other teacher and her daughter to lunch, drive them to a fast food establishment and back and to inquire of the victim if she still needed a ride home. This conduct was unrelated to the petitioner's academic duties.

As we have seen, the majority holds that the victim's mother entrusted the victim to the school as a whole and, thus, that any teacher at the high school has supervisory responsibility with respect to any interactions with her on the school premises. From that premise, it reasons that if any one of the teachers undertakes to drive the victim home, that teacher has voluntarily extended that responsibility, with the result that the mother never resumes responsibility expressly or by conduct.

I reject the premise of the majority's argument. Simply because a parent sends a child to school, thereby entrusting that child to the school, does not mean that every teacher in that school has, or assumes, responsibility for supervision of that child. Those with whom the child interacts academically or in connection with school related activities—his or her home room teacher, math teacher, english teacher or the advisors to clubs or athletic groups to which he or she might belong—occupy that status, at the times of that interaction, certainly and probably while the child is at school. I am not at all sure that the other teachers in the school, those with whom the child generally has no academic or school related interactions, have, or assume, as a general matter, any such responsibility. It may be, as the principal testified, a teacher, under "[a]ny scenario on school campus, even if that teacher is

not on hall duty or even if that student is not a member of their class," is responsible to ensure the child's safety, but that does not extend to any scenario off the school campus. The principal also made this point, as the following colloquy demonstrates:

> MR. HOOD: Ms. Goldian, once the school day ends, and the teacher—if a student is not seeing a teacher or if a student sees a teacher off school grounds and it is not for an academic activity, it is not detention, it is not part of a club or a team, and the teacher sees students off school grounds and not during school hours, that teacher does not have responsibility for that student, does he?
>
> A [By Ms. Goldian, the principal] No.

> * * * *

> MR COX: Redirect, if I may.

> * * * *

> In a hypothetical scenario, what if that teacher has removed that student from school grounds?
>
> A I don't know. I think it would determine why they were removed from the school grounds. Did it have to do with school. (*sic*)

> * * * *

> MR. HOOD: If it didn't have anything to do with school, then the teacher would not have any responsibility, correct?
>
> A I think that's correct. I want to emphasize I think that's correct.

This is consistent with the law, which does not impose on any individual any legal obligation to care for, or look after, the welfare of a stranger, adult or child, without a special relationship. *Pope,* 284 Md. at 324, 396 A.2d at 1064.

Furthermore, the majority is simply wrong when it identifies the petitioner as the teacher with the responsibility for

supervision of the victim. That responsibility rested with the teacher for whose benefit the victim remained after school, the one she assisted in her room. It was that teacher in whom the responsibility for supervision would have continued in the absence of its termination or resumption by the victim's mother. There simply were no " 'official' supervisory interactions with the victim that began at school." 372 Md. at 296, 812 A.2d at 1023. Driving students home or taking them to lunch with a fellow teacher is not a part of a teacher's academic duties and those were the only responsibilities that the petitioner assumed on the day in question, on the school premises. Thus, the petitioner never had, or assumed, responsibility for the victim's supervision and, so, it could not have remained with him or been extended by an offer to drive the victim home. The majority expands *Pope* far beyond its intendment and, in the process, contrary to the law, places additional responsibility on teachers to look after and care for children to whom they have no academic or professional duty, simply because of their status.

The majority relies on *State v. Pasteur*, 9 S.W.3d 689 (Mo.Ct.App.1999). Rather than support its position, that case actually supports the petitioner's argument. There, the defendant was charged with, *inter alia* endangering the welfare of a child in the first degree,[6] which for conviction, required proof that the defendant was a "person ... otherwise charged with the care and custody" of the child. The defendant, a band teacher, argued "that a teacher should not automatically be charged with the care and custody of his students, absent specific evidence of a special relationship between the parties, such as guardianship." *Id.* at 697. Interpreting the words "care and custody," to refer to "supervision" or "immediate charge and control exercised by a person or an authority," *id.*,

---

**6.** The defendant was not charged with child abuse, which, under Missouri law also applies to "those responsible for the care, custody, and control of the child," defined, for that purpose, as "those included but not limited to the parents or guardian of a child, other members of the child's household, or those exercising supervision over a child for any part of a twenty-four hour day." *Id.* at 697.

*quoting* WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY (1967), the Missouri Court of Appeals held that the defendant had care and custody because he was the victim's

> "band teacher, and as such, he held a confidential relationship with her .... such a relationship put him in a custodial position. Further, the evidence showed that both instances of misconduct occurred while Defendant and [the victim] were engaged in school-related activities, once following a school play and once inside the school after band practice."

*Id.* at 697–98. By contrast, in this case, the petitioner was not the victim's teacher and the sexual misconduct occurred off school property and not while the petitioner and the victim were engaged in school-related activities.

The Missouri court's point, reflected in that portion of its opinion quoted by the majority, was well made. But it was not the importance of the generic "teacher" about which it spoke, rather it was about the relationship that exists between a student, pupil and his or her teacher. This becomes quite clear when the entirety of the discussion is reproduced:

> "Teachers are undeniably charged with the 'care and custody' of students. When parents send their child to school, they entrust the teacher with that child's well-being. For nearly a century, courts have recognized this basic principle. In *State v. Hesterly*, 182 Mo. 16, 81 S.W. 624, 627 (Mo.1904), the court stated that 'we can conceive of the creation of no higher trust than that of parents confiding the care of their children to the teacher.' The court further noted that a teacher's duty of care and custody extends beyond the confines of the schoolyard. 'The confidential relation of teacher and pupil exists as well after the child reaches home as it does in the schoolroom.... The evil intended to be prevented is the abuse of the confidential relation, and that exists wherever they may be, and on all occasions, as long as the relation of teacher and pupil is in existence.'" 81 S.W. at 627.

In the instant case, the evidence indicated that Defendant was S.S.'s band teacher, and as such, he held a confidential relationship with her.  By virtue of Defendant's position, he was able to exert influence upon her, not only within the confines of the school, but outside of it as well.  Section 568.045.1(2) seeks to protect children who are placed in the 'care and custody' of any 'person' and as such, should be construed to include teachers.  The trial court, therefore, did not err in submitting Instruction No. 6 to the jury." [7]

*Id.* at 697.

Another basis for the majority holding is that there was no temporal break in the teacher and student relationship.  372 Md. at 294, 812 A.2d at 1022 (*quoting Anderson,* 142 Md.App. at 509–10, 790 A.2d at 739).  As I have previously explained, the petitioner was not the victim's teacher within the contemplation of the child abuse statute.  Moreover and in addition, the petitioner's response is worth noting:

"The Court [of Special Appeals] stated that it may have reached a different result if the [petitioner] and [the victim] had parted and met at a location unconnected with Kenwood High School.... The same student/teacher relationship or

---

7.  The jury was instructed as follows:
     "As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
     "First, on or about the 19th day of November, and the 27th day of November, 1997, in the County of Dunklin, State of Missouri, the defendant touched the breast of [S.S.], and
     "Second, that this conduct constituted sexual contact, and
     "Third, that [S.S.] was less than seventeen years old, and
     "Fourth, that the defendant acted knowingly in engaging in sexual contact with [S.S.], a child less than seventeen years of age, and
     "Fifth, *that defendant was a school teacher, and charged with the care and custody of the child,*
     "Then you will find the defendant guilty under Count I of endangering the welfare of a child in the first degree.
     "However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense."
     *State v. Pasteur,* 9 S.W.3d 689, 696 n. 5 (Mo.Ct.App.1999).  (Emphasis in original).

lack thereof existed whether they left school together or met later. In either factual scenario, the [petitioner] was not with the child in relation to his academic duties. Accordingly, the implied consent for responsibility which must exist between the parent and the [petitioner] is not present. There was insufficient evidence to prove that the [petitioner] had responsibility for supervision of [the victim]."

I dissent. Judges ELDRIDGE and WILNER join in the views expressed herein.