ADKINS, J.,
dissenting.
Respectfully, I dissent in part from the Majority’s opinion and holding. I concur with Judge Watts’s Dissent (“Watts Dissent”), but depart from some of its reasoning. The Watts Dissent relies heavily on our decision in Anderson v. State, 372 Md. 285, 812 A.2d 1016 (2002), a criminal case involving child sexual abuse committed by a teacher away from the school premises. Certainly Anderson is instructive regarding the issue presented herein, and I concur with her view that Anderson declined to take a narrow view of the Art. 27, § 35C(b) requirement that the defendant have “temporary *143 care or custody or responsibility for the supervision of a child.”
But the Majority never reckons with the material difference between Anderson and this case — namely, that the sexual abuse occurred when the defendant was driving the child home from school, and doing so, we held, with the implied consent of the child’s mother. Implied consent was the foundation of our holding in Anderson. Recognizing that consent by the legal guardian is the only basis for a third party to obtain responsibility for the supervision of a minor child, we held that when a parent entrusts his or her child to a school, the parent “ ‘impliedly consents to all reasonable measures taken by a teacher to assure the safe return of the child from school[.]’ ” Anderson, 372 Md. at 294, 812 A.2d 1016 (citation omitted).
We then extended the reach of the implied consent doctrine, reasoning that the absence of any temporal break between the teacher’s supervision at school and continued supervision while driving the child home, created an “ ‘indivisible, ongoing relationship.’ ” Id. at 294-96, 812 A.2d 1016 (“It is the school related activity immediately connected to the abuse ... that provides the basis of supervision- ‘From the moment he extended his invitation until the time he and [the victim] had sexual intercourse, she was never for long, if ever, either out of his sight or, for that matter, out from under his influence or control.’ ”) (citations omitted). Although the sexual abuse took place at the teacher’s home, we considered that part of his trip to take the student home. See id.
Here, unlike Anderson, there was a break between B.A.’s role as instructor at the martial arts school, and he never undertook to take the child home. His inappropriate sexual advances to the minor by texts and during telephone calls occurred remotely, in the evening. Accordingly, the implied parental consent to transport a child home from school that was central to our decision in Anderson simply does not sustain us here.
*144 I think the statute reaches B.A.’s conduct not by a theory of implied parental consent, but by a settled rule of statutory construction — that a civil, remedial statute, if ambiguous, should be interpreted in favor of furthering the legislative remedial purpose. See Opert v. Crim. Injuries Comp. Bd., 403 Md. 587, 593, 943 A.2d 1229 (2008) (“If ... we conclude that ‘the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute’s legislative history, case law, and statutory purpose.’ ”) (citations omitted). It cannot be disputed that the remedial purpose of Md.Code (1984, 2012 Repl. Vol.), § 5-701(x)(1) of the Family Law Article (“FL”) is the protection of children. As the statute reads, “ ‘[sjexual abuse’ means any act that involves sexual molestation or exploitation of a child by a parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child[.]” FL § 5-701(x)(1) (emphasis added). We need to decide whether, in this civil statute, the phrase, “other person who has ... temporary care or custody or responsibility” imposes a strict temporal requirement in order to invoke inclusion of B.A. in the “confidential computerized database that contains information regarding child abuse[.]” FL § 5-701. I emphasize that this statute is civil, because I would differentiate our holding from any criminal case with similar facts. Also the registry on which B.A. and this incident would be included is only accessible by “(1) the protective services staff of the Administration; (2) the protective services staffs of local departments who are investigating a report of suspected abuse or neglect; and” (3) law enforcement personnel who are investigating a report of suspected abuse or neglect. FL § 5-714.[1]
*145 One reasonable way to interpret this section is to read the phrase “other person who has ... temporary care or custody or responsibility” liberally to mean that the section would prohibit sexual exploitation of a child, so long as the adult, in an ongoing relationship exercises responsibility and in person care for the child, with the further proviso that there be a significant connection between the abuse and the in-person care. I would require that the care be in person, but the abuse may occur by other means. The evidence in this case can readily support a factual conclusion that would meet this standard.
Like Judge Watts’s dissent, my analysis depends on the strength of a teacher’s relationship with, and influence on, the child, which may be presumed. The authority exercised by this instructor, together with the student’s desire to excel in this martial arts program could bolster that presumption. The telephonic communications would support a conclusion that B.A. repeatedly drew upon the martial arts culture, calling her a “warrior,” and saying that he was “very proud that [she was] working out so hard,” and that “You ARE strong ... among many other wonderful traits.” (Ellipsis in original.) He also offered, more than once, to drive her to a workshop on tai chi. In another email, he wrote “I’m sorry that you got hurt in class. I ... can only hope that you’re *146 alright? ... [Y]ou’re beyond beautiful and wonderful.” He exerted his authority as a martial arts instructor by threatening to discipline V.K’s boyfriend, writing that the boyfriend’s jealousy was a problem, and that B.A. “[could] not allow this type of vibe/attitude in my work[ ]place. He’s either going to fix it or I’m talking to him. And if it still doesn’t change I’m going to be forced to not allow him to come anymore[.]”
V.K. responded to some of his emails and texts and engaged in a five-hour phone conversation with him. It is reasonable to conclude that she would not have done so, absent the student-teacher relationship. In short, there was more than enough evidence to support a conclusion that there was a substantial connection between the martial arts instruction and the telephonic sexual abuse. This leads me to a conclusion that the ALJ erred in concluding that because there was “a clear temporal break in the taekwondo-instructor/taekwon-do-student relationship when the sexual correspondence took place ... the local department failed to show an instructor-student relationship between” B.A. and V.K. when the sexual communication occurred. To be sure, there was a temporal break, but in this civil case, that, on its own, does not eliminate the possibility that B.A. violated FL § 5-701.
In conclusion, unlike the Majority, I would vacate the judgment and opinion of the Court of Special Appeals, and remand to that Court with instructions to remand to the Circuit Court for further remand to the ALJ to make additional findings not inconsistent with this opinion.

. This statute is not nearly as restrictive of a registrant’s conduct, nor so public, as the sexual registry required after conviction of certain sexual abuse crimes. We described the severity of that statute in Doe v. Department of Public Safety & Coirectional Services, 430 Md. 535, 562, 62 A.3d 123 (2013):
Petitioner currently must report in person to law enforcement every three months, give notice to law enforcement of his address and any changes of address, and notify law enforcement before being away *145 from his home for more than seven days.... Furthermore, he must disclose to the State a significant amount of information, some of which is highly personal, including: his employment address; information about his conviction; his social security number; his email address and computer log-in names; information about vehicles he often uses, including those not owned by him; his finger prints and palm prints; all "identifying factors, including a physical description,” and an updated digital image of himself. See C.P. §§ 11-706, 11-707 (2001, 2008 Repl. Vol., 2012 Cum. Supp.). Additionally, other than to vote, Petitioner is prohibited from entering onto real property that is used as a school or a family child care center licensed under Title 5, Subtitle 5 of the Family Law Article, without first obtaining permission.... If Petitioner fails to comply with these requirements, he faces terms of imprisonment, depending on the violation, of up to three or five years.
If we were dealing with that public sex offender registry, our conclusions here may be different.