17 A.3d 144

**William Leslie HARRISON**

v.

**STATE of Maryland.**

**No. 2247, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

April 4, 2011.

David E. Carey, Bel Air, MD & Thomas A. Pavlinic, Annapolis, MD, for appellant.

Sarah P. Pritzlaff (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., MEREDITH and HOTTEN, JJ.

HOTTEN, J.

On August 27, 2009, appellant, William Leslie Harrison, was convicted by a jury in the Circuit Court for Harford County of sexual abuse of a minor. Appellant was sentenced to ten years imprisonment, with all but five suspended. Appellant

noted a timely appeal, and presents two questions for review, which we quote:

1.  Whether the evidence at trial was sufficient to establish that Mr. Harrison had "responsibility for supervision of a minor," an element of sexual abuse of a minor, where the minor he hired to do yard work at his home was free to set his own hours and come and go as he pleased?

2.  Whether the Circuit Court erred by failing to instruct the jury as to the lesser included offenses of sexual offense in the third degree and sexual offense in the fourth degree, because a rational jury could have found that evidence was sufficient to convict Mr. Harrison of one or both of these lesser included offenses and acquit him of sexual abuse of a minor?

For the reasons outlined below, we affirm the judgment of the circuit court.

## STATEMENT OF FACTS

Appellant approached Mr. B., the victim's father, during the summer of 2006 to inquire whether the victim, S.B., who was thirteen at the time, would be interested in "landscaping and general clean up." Appellant explained that "he would watch over [S.B.]" and "teach him how to use hand tools." S.B. was interested, so Mr. B. left a note in appellant's mailbox stating S.B. was willing to work part-time for him. S.B. began working immediately. His duties consisted of mulching, moving rocks, raking lily pads, cutting wood, and building a playhouse. When appellant was on vacation, or unavailable, S.B. would water the plants, paint, take care of appellant's dog, or do "other odd jobs around the property."

S.B. stopped working for appellant during the summer of 2007 when he revealed to his mother that appellant had touched him inappropriately. S.B. advised that the touching began when he and appellant were watering flowers, and appellant used S.B.'s shirt to dry his hands. The next incident occurred when S.B. and appellant were building a playhouse. It was getting cold, and appellant told S.B. that the best way

to keep his hands warm was to put them in his pants. S.B. subsequently put his hands in his pants. Appellant then put his hands in S.B.'s pants, and held S.B.'s penis for approximately 30 seconds. S.B. said this type of touching repeatedly happened after the first incident.

When Mr. B. learned about the inappropriate touching, he informed appellant that S.B. could no longer work for him, and asked him to cease further communication with S.B. Appellant ignored Mr. B.'s request, sent S.B. text messages, and left him a voicemail. He also left S.B. a birthday gift on their doorstep. The gift prompted Detective Thomas Bradley to set-up a one-party consent phone call, in which appellant stated, amongst other things, "you are the best thing going on in my life," and "I care about you so much." He further stated that he had been miserable for the past three months, "[n]ot because of what I did ... but because I did it." Detective Bradley thereafter sought search warrants for appellant's residence, his business in Bel Air, and property in Ocean Pines. Appellant was later arrested.

## PROCEDURAL HISTORY

On January 2, 2008, appellant was indicted on one count of sexual abuse of a minor, one count of child abuse in the second degree, and 216 counts of sexual offense in the third degree. On August 25, 2009, the day of trial, the State entered, without objection, *nolle prosequi* for the charges of child abuse in the second degree, and the 216 counts of sexual offense in the third degree.

At the conclusion of the State's case-in-chief, appellant moved for judgment of acquittal. Appellant alleged that the State failed to establish he was responsible for the supervision of S.B., because S.B. could come and go as he pleased, and set his own work schedule. The State countered that there was an "acceptance of supervision for the minor child," because S.B. worked under the direction of appellant. The circuit court denied appellant's motion, and explained that "[i]t is clear from the evidence that the only logical inference that one

can draw" is that throughout the time S.B. worked for appellant he had "temporary custody or supervision and it was done with the knowledge of young [S.B.'s] parents."

Appellant renewed his motion for judgment of acquittal at the close of all the evidence. He presented the same arguments, but this time, emphasized that there was no evidence of express or implied acceptance of responsibility. The State, again, argued that the evidence showed that appellant was responsible for the supervision of S.B. because "the two of them would be together and that he would oversee his activities." The State acknowledged that there was no written contract transferring "temporary supervision, care or custody," but argued that there was an implied transfer of responsibility when appellant took care of S.B. "in [his] parents' stead." In denying the second motion for judgment of acquittal, the court held that testimony about the nature and extent of S.B. and appellant's relationship, the nature of the work S.B. performed, and how often S.B. worked, demonstrated that appellant was responsible for the supervision of S.B.

During the discussion of jury instructions, the court provided appellant's counsel with a proposed instruction for sexual abuse of a minor, and the following colloquy occurred:

THE COURT: Do you want me to get into the definition of fourth degree sex offense?

APPELLANT'S COUNSEL: Third and fourth degree.

THE COURT: At your risk?

APPELLANT'S COUNSEL: Sure because I am going to argue that to the jury. My argument to the jury is going to be he has been improperly charged, that the correct charge he should have been charged with—

THE COURT: You're not going to argue that to the jury. I'm not going to permit it.

APPELLANT'S COUNSEL: Your Honor, that's what the testimony is.

THE COURT: I am not going to permit that. You're going to have to give me some authority as to why you can argue to a jury the State had improperly charged somebody when

if that was the case you could have moved to dismiss on the grounds he was improperly charged?

APPELLANT'S COUNSEL: Your Honor, the elements haven't been satisfied and there is some testimony a fourth degree sex offense has occurred.

THE COURT: I will give them the definition of that, but you can't argue to the jury it was improperly charged.

APPELLANT'S COUNSEL: Then maybe a different way to phrase it. That he is not guilty of the charge pending against him.

THE COURT: You can do that. You can't say he was improperly charged by the State.

APPELLANT'S COUNSEL: I will say—

THE COURT: You can argue that the facts don't establish the elements necessary to establish a conviction, sure.

APPELLANT'S COUNSEL: Right. I won't say he was improperly charged.

This issue was rehashed in the following exchange:

THE COURT: You can't argue to the jury he was improperly charged.

APPELLANT'S COUNSEL: I thought we agreed on that I can't say he was improperly charged. I can say the evidence does not support a conviction for the charge pending against him.

THE COURT: You can do that.

APPELLANT'S COUNSEL: And I can say to the jury I believe that the evidence supports a conviction for fourth degree—

THE COURT: No, I am not going to allow that. I am telling you up front you cannot argue to the jury or suggest to the jury he should have been charged with third or fourth degree sex offense. Don't do it.

Appellant belabored the point, and the following conversation ensued:

APPELLANT'S COUNSEL: Okay. So I don't want to be slammed down. I am still fuzzy. I can say they haven't

met the elements, he is guilty of other offenses, but I can't say what those offenses are.

THE COURT: You can't argue to the jury he was improperly charged whether you want to do it directly or indirectly.

APPELLANT'S COUNSEL: But you said I could say he doesn't meet the elements of this charge.

THE COURT: Of this charge.

APPELLANT'S COUNSEL: But I am not free to say there are other elements of other charges.

THE COURT: No, you are not.

The circuit court ended the discussion and proceeded with instructing the jury. The case was submitted to the jury, and the jury returned a verdict of guilty for sexual abuse of a minor. Appellant noted a timely appeal.

## DISCUSSION

### I.

■ Appellant argues that the evidence adduced at trial was insufficient to establish he was guilty of sexual abuse of a minor, because the State was unable to establish that he had "responsibility for supervision of a minor." When reviewing whether there was sufficient evidence to support a criminal conviction, we review " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Tichnell v. State* 287 Md. 695, 717, 415 A.2d 830 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (emphasis in original). In this regard, we " 'give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the appellate court] would have chosen a different reasonable inference.' " *Burlas v. State*, 185 Md.App. 559, 568, 971 A.2d 937 (2009), *cert. denied*, 410 Md. 166, 978 A.2d 245 (2009) (quoting *State v. Suddith*, 379 Md. 425, 430, 842 A.2d 716 (2004)). In this case, we must give the trier of fact

deference because the issue of whether a person has responsibility for the supervision of a minor is a question of fact for the jury to determine. *See Anderson v. State*, 372 Md. 285, 292, 812 A.2d 1016 (2002) (citing *Newman v. State*, 65 Md.App. 85, 99, 499 A.2d 492 (1985)).

The Court of Appeals in *Pope v. State*, 284 Md. 309, 396 A.2d 1054 (1979), articulated the meaning of "responsibility for supervision of a minor" as it pertains to sexual abuse of a minor. The Court of Appeals explained:

> A person may have the responsibility for the supervision of a minor child in the contemplation of § 35A [now codified as Md.Code (2002) § 3–602(b)(1) of the Criminal Law Article ("C.L.")] although not standing in loco parentis to that child. "Responsibility" in its common and generally accepted meaning denotes "accountability," and "supervision" emphasizes broad authority to oversee with the powers of direction and decision. *See* American Heritage Dictionary of the English Language (1969); Webster's Third New International Dictionary (1968). As in the case of care or custody of a minor child under the child abuse law, a judicial decree is not necessary to obtain responsibility for the supervision of a minor child under that statute. Had the Legislature wished to narrow application of that law to those who had been charged with responsibility for the supervision of a child by court order, it could readily have done so in explicit language to that end. *See [Bowers v. State*, 283 Md. 115, 130, 389 A.2d 341 (1978)]. Absent a court order or award by some appropriate proceeding pursuant to statutory authority, we think it to be self-evident that responsibility for supervision of a minor child may be obtained only upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility. In other words, a parent may not impose responsibility for the supervision of his or her minor child on a third person unless that person accepts the responsibility, and a third

person may not assume such responsibility unless the parent grants it.

\*       \*       \*

On the other hand, once responsibility for the supervision of a minor child has been placed in a third person, it may be terminated unilaterally by a parent by resuming responsibility, expressly or by conduct. The consent of the third party in such circumstances is not required; he may not prevent return of responsibility to the parent. But, of course, the third person in whom responsibility has been placed is not free to relinquish that responsibility without the knowledge of the parent.

*Id.* at 323–24, 396 A.2d 1054.

Appellant contends that he was not "legally responsible" for S.B. because there was no "transfer and acceptance of supervision." However, the record indicates that there was implied consent that appellant would assume responsibility for the supervision of S.B. Mr. B. testified that appellant told him that he would watch over S.B. while he worked on his property. Ms. B. had the same understanding. Appellant was then presented with the opportunity to accept responsibility for the supervision of S.B. when Mr. B. left a note in his mailbox stating S.B. was interested in working for him. Appellant accepted the responsibility for supervision of S.B. when he called S.B. and offered him part-time work. Appellant repeatedly accepted the responsibility for supervision of S.B. each time he called S.B. to work. Mr. and Ms. B. resumed responsibility for the supervision of S.B. when S.B. was dropped off at the edge of appellant's property. Thus, pursuant to the teachings of *Pope*, appellant was responsible for supervision of S.B. when the incidents occurred, and only relinquished responsibility when S.B. left his property.

Appellant next argues that *Ellis v. State,* 185 Md.App. 522, 971 A.2d 379 (2009), and *Anderson, supra,* 372 Md. at 285, 812 A.2d 1016, demonstrate that he was not responsible for the supervision of S.B., because S.B. was free to come and go as he pleased. Appellant's reliance on *Ellis* and *Anderson,* how-

ever, is misplaced. Nothing in *Ellis* and *Anderson* suggests that a person does not assume responsibility for the supervision of a minor simply because he or she could come and go as they please.

In *Ellis*, a high school teacher, the defendant in that case, gave a former student his phone number and the two started communicating. 185 Md.App. at 530, 971 A.2d 379. At first, the communication was "innocent in tone," but it quickly "became increasingly sexual." *Id.* On one occasion, the defendant invited her to his classroom so she could see his penis in person, because it was "better in person." *Id.* The student visited the defendant's classroom the next day and he showed her his penis. *Id.* at 531, 971 A.2d 379. When she saw it she told him to "put his penis back in his shorts." *Id.* The defendant then grabbed her hand and tried to force her to touch his penis. *Id.* On appeal, the defendant asserted that he was not responsible for the supervision of the student because the incidents occurred after school hours. *Id.* at 548, 971 A.2d 379. We disagreed, and held:

> The ringing of the school bell that denotes the end of classes cannot terminate the responsibility of the school for the students on the school premises, because it would be unreasonable to suggest that, when a parent entrusts a child to a school, such parent does not impliedly consent to the school's continued duty to ensure the safety of the child until the child leaves the school premises for the day.

*Id.* at 547, 971 A.2d 379.

In *Anderson*, a sexual encounter occurred between petitioner, a teacher, and a student. 372 Md. at 288, 812 A.2d 1016. Petitioner asked the student if she wanted a ride home and she accepted. *Id.* at 289, 812 A.2d 1016 (citing *Anderson v. State*, 142 Md.App. 498, 503–04, 790 A.2d 732 (2002)). As petitioner was driving the student home, he asked her if she wanted to play pool at his house. *Anderson*, 372 Md. at 289, 812 A.2d 1016 (citing 142 Md.App. at 503–04, 790 A.2d 732). The student was interested so petitioner drove to his house. *Id.* Once the game of pool ended, petitioner started rubbing

her face and then kissed her. *Anderson,* 142 Md.App. at 504, 790 A.2d 732. The kissing then led to sexual intercourse. *Id.* At trial, petitioner maintained his innocence, and testified that he took the student home "not to play pool, but out of concern for her safety." *Id.* He also asserted that the student kissed him and then he took her home. *Id.* at 505, 790 A.2d 732.

On appeal, petitioner argued that he did not have responsibility for the supervision of the student because "there was no mutual consent that he drive" the student home. *Anderson,* 372 Md. at 294, 812 A.2d 1016. The Court of Appeals disagreed, and reiterated Chief Judge Krauser's analysis:

> Indeed, it is absurd to suggest that when a parent entrusts her child to a school that that parent does not impliedly consent to any reasonable assistance that a teacher may provide to assure the child's return home from school. In other words, it may be reasonably assumed by both parent and teacher that a parent impliedly consents to all reasonable measures taken by a teacher to assure the safe return of the child from school, including personally driving that child home. . . . Once a teacher assumes the task of personally transporting a child from school to home with the implied consent of the parent, he or she also assumes the responsibility of supervising that child. . . . Finally, there was no temporal break in the teacher and student relationship that existed between appellant and the child. Such a break, depending on its length and nature, can interrupt the implied consent of the parent and dispel the teacher's duty to supervise.

*Id.* at 294–95, 812 A.2d 1016 (quoting *Anderson,* 142 Md.App. at 509–10, 790 A.2d 732).

As evidenced above, *Ellis* and *Anderson* demonstrate that a teacher's responsibility may extend beyond his or her normal duties and hours, irrespective of whether a minor has some latitude in coming and going to a particular location. Nevertheless, that is not an issue in the present case. Appellant would call S.B. to determine his availability for work. When S.B. was available he would come over and work. S.B. would

begin work at 3 p.m. and end around 5–5:30 p.m. Appellant always inquired about when S.B. had to return home and ensured that S.B. would return at that time. The record *clearly* shows that S.B. did not come and go as he pleased.

Appellant next argues that he was not responsible for the supervision of S.B. because the factual scenarios set forth in *Brackins v. State*, 84 Md.App. 157, 578 A.2d 300 (1990), and *Newman v. State*, 65 Md.App. 85, 499 A.2d 492 (1985), establish "responsibility for supervision of a minor," and this case is "readily distinguishable." Appellant appears to believe that the situations outlined in *Pope*, one of which was babysitting, limit our consideration of whether an adult was responsible for the supervision of a minor to those examples. However, the examples in *Pope* are merely hypotheticals that help illustrate what constitutes responsibility for supervision of a minor. As such, *Brackins* and *Newman* are instructive, but not controlling.

In *Brackins*, the victim, a twelve year old girl, was abused by the defendant while her mother was at work. 84 Md.App. at 159–60, 578 A.2d 300. The *Brackins* Court determined that the record was sufficient to determine that the defendant had "care, custody and responsibility" of the victim because the mother was married to him; the mother, the victim, and [the defendant] lived together; and [the defendant] was responsible for the care of the children when the mother was working. *Id.* at 164, 578 A.2d 300. In *Newman*, a thirteen year old girl was repeatedly abused by the boyfriend of a woman she was babysitting for. 65 Md.App. at 89, 499 A.2d 492. The defendant, the boyfriend, would touch the babysitter's vagina when he drove her home, and raped her on one occasion. *Id.* at 89–90, 499 A.2d 492. The *Newman* Court concluded that there was sufficient evidence to determine that the defendant had responsibility for the supervision of the victim, because "[i]n addition to evidence that [the defendant] transported the victim to and from her babysitting job, there was evidence that he paid her for babysitting on several occasions and that the babysitting was done in [his] home." *Id.* at 99, 499 A.2d 492. Moreover, the victim's mother stated that the defendant

was responsible for her safety to and from the house. *Id.* Although the facts in both cases are readily distinguishable, like the parents in *Brackins* and *Newman,* Mr. and Ms. B. assumed that S.B. would be safe in the company of an adult, and entrusted S.B. to that adult. This was a rational assumption given appellant's assurance to Mr. and Ms. B. that he would watch over S.B.

In sum, we conclude that appellant was responsible for the supervision of S.B. Accordingly, the evidence presented was sufficient for a jury to find, beyond a reasonable doubt, that appellant was guilty of sexual abuse of a minor.

## II.

Appellant argues that the circuit court erred when it failed to provide jury instructions for the uncharged crimes of third[1] and fourth-degree[2] sexual offense.[3] He relies on *Hook*

---

1. Third-degree sexual offense is outlined in C.L. § 3–307(a) as:

   *Prohibited.*—A person may not:
   (1)(i) engage in sexual contact with another without the consent of the other; and
   (ii)1. employ or display a dangerous weapon, or a physical object that the victim reasonably believes is a dangerous weapon;
   2. suffocate, strangle, disfigure, or inflict serious physical injury on the victim or another in the course of committing the crime;
   3. threaten, or place the victim, that the victim, or an individual known to the victim, imminently will be subject to death, suffocation, strangulation, disfigurement, serious physical injury, or kidnapping; or
   4. commit the crime while aided and abetted by another;
   (2) engage in sexual contact with another if the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual, and the person performing the act knows or reasonably should know the victim is a mentally defective individual, a mentally incapacitated individual, or a physically helpless individual;
   (3) engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim;
   (4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 21 years old; or

*v. State*, 315 Md. 25, 553 A.2d 233 (1989), to assert that, even though he was not charged with third or fourth-degree sexual offense, the evidence warranted such instructions.

In *Hook*, the State brought first and second-degree murder charges against petitioner, but then asked the trial court to enter *nolle prosequi* as to second-degree murder. *Id.* Over defense counsel's objection, the trial court entered *nolle prosequi* for the charge of second-degree murder. *Id.* at 35, 553 A.2d 233. Defense counsel later requested that the court instruct the jury as to second-degree murder and the trial court refused. *Id.* at 37, 553 A.2d 233. The court then instructed counsel that he could not address the issue of second-degree murder during his closing, except to notify the jury that it was not before them. *Id.* at 37–38, 553 A.2d 233. On appeal, the Court of Appeals analyzed whether petitioner was deprived of his right to fundamental fairness because the trial court failed to provide the instruction for second-degree murder. *Id.* at 36–37, 553 A.2d 233. The Court of Appeals held that petitioner was deprived of fundamental fairness, and explained:

> When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included

---

(5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.

**2.** Sexual offense in the fourth-degree is outlined, in relevant part, in C.L. § 3–308(b):

> *Prohibited.*—A person may not engage in:
> (1) sexual contact with another without the consent of the other;
> (2) except as provided in § 3–307(a)(4) of this subtitle, a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is at least 4 years older than the victim; or
> (3) except as provided in § 3–307(a)(5) of this subtitle, vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 4 years older than the victim.

**3.** C.J. § 5–106(a) provides that misdemeanors must be instituted within one year of the offense occurring. As such, several of the potential fourth-degree offense charges that occurred before January 2, 2007 would have been barred by the statute of limitations.

offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense.

\* \* \*

In short, it is simply offensive to fundamental fairness, in such circumstances, to deprive the trier of fact, over the defendant's objection, of the third option of convicting the defendant of a lesser included offense. And if the trial is before a jury, the defendant is entitled, if he so desires, to have the jury instructed as to the lesser included offense.

*Id.* at 43–44, 553 A.2d 233.

*Hook* is not applicable to the case *sub judice* because appellant did not object to the court entering *nolle prosequi* as to child abuse in the second-degree, or to the 216 counts of third-degree sexual offense. The record reflects that it was appellant's strategic choice to proceed with the "all-or-nothing" approach that left the jury with the "Hobsian choice" [4] of convicting appellant of sexual abuse of a minor, or setting him free. Appellant only pursued the instruction for fourth-degree sexual offense to demonstrate that he was incorrectly charged. Accordingly, appellant was not deprived of fundamental fairness.

Appellant also relies on *Hagans v. State,* 316 Md. 429, 559 A.2d 792 (1989), to argue that "regardless of whether the lesser included offense was charged and then nol prossed, or never charged," the court should have given the instruction on third and fourth-degree sexual offense. In *Hagans,* the Court

---

**4.** In *Hook,* the Court of Appeals explained the genesis of the term "Hobson choice:"

After Thomas Hobson, 1631 English liveryman, from his practice of requiring every customer to take the horse which stood nearest the door. Thus, the forced acceptance of something whether one likes it or not; the necessity of accepting something objectionable through the fact that one would otherwise get nothing at all; something that one must accept through want of any real alternative. Webster's Third New International Dictionary of the English Language Unabridged (1981) at 1076.

315 Md. at 38 n. 18, 553 A.2d 233.

of Appeals held that a defendant could be convicted of a lesser included offense even though he or she was not originally charged with that offense. *Id.* at 450, 559 A.2d 792. In support of its holding, the *Hagans* Court explained the rationale behind the lesser included offense rule:

> The doctrine is a valuable tool for defendant, prosecutor, and society. From a defendant's point of view, it provides the jury with an alternative to a guilty verdict on the greater offense. From the prosecutor's viewpoint, a defendant may not go free if the evidence fails to prove an element essential to a finding of guilt on the greater offense. Society may receive a benefit because, in the latter situation, courts may release fewer defendants acquitted of the greater offense. In addition, the punishment society inflicts on a criminal may conform more accurately to the crime actually committed if a verdict on a lesser included offense is permissible.

316 Md. at 448, 559 A.2d 792 (quoting *The Lesser Included Offense Doctrine in Pennsylvania: Uncertainty in the Courts,* 84 Dick. L.Rev. 125, 126 (1979)).

The reasons espoused above are not applicable to this case because appellant did not want the jury to have an alternative option to sexual abuse of a minor. On appeal, appellant argues that he requested the jury instructions "because a rational jury could have found the evidence was sufficient to convict [appellant] of one or both of the lesser included offenses and acquit him of sexual abuse of a minor." However, the record clearly reflects that appellant merely wanted the instructions to illustrate that appellant should have been charged with fourth-degree sexual offense, and not sexual abuse of a minor.

Nevertheless, we shall analyze whether sexual offense in the third and fourth-degree are lesser included offenses of sexual abuse of a minor.[5] In making that determination, we explore

---

**5.** The questions of whether third or fourth-degree sexual offense are lesser included offenses of the charge of sexual abuse of a minor

*Nightingale v. State,* 312 Md. 699, 542 A.2d 373 (1988), *super-
ceded by 1990 Md. Laws 2636–37, as recognized in Adams v.
State,* 86 Md.App. 377, 387, 586 A.2d 810 (1991). In *Nightin-
gale,* the petitioners alleged that double jeopardy precluded
their convictions and sentences for child abuse and sexual
offense because the crimes were the same under the required
evidence test.[6] *Id.* at 702, 542 A.2d 373. In analyzing that
argument, the Court of Appeals stated:

> It is apparent ... that child abuse, taken in its broadest
> sense, involves certain elements (*e.g.,* physical harm and a
> particular relationship between actor and victim) that none
> of the sexual offenses do. By the same token, each of the
> sexual offenses requires some elements (*e.g.,* performance of
> a sexual act or sexual contact and sexual arousal or gratifi-
> cation) that child abuse does not. But the analysis does not
> end at this point. When a multi-purpose criminal statute is
> involved, we refine it by looking at the alternative elements
> relevant to the case at hand.

*Id.* at 705, 542 A.2d 373. The Court of Appeals further noted
that "[i]f, when we look at the applicable alternative elements,
a lesser offense in effect becomes one of the elements of
another offense, the [*Blockburger v. United States,* 284 U.S.
299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ][7] test is met." *Id.* at
707, 542 A.2d 373. The *Nightingale* Court then determined
that "sexual offense became, in effect, a lesser included offense
of child abuse" because the petitioners were found guilty

---

depends on the particular circumstances presented. For example, if
sexual abuse is a continuing offense occurring over a period of time,
then the charges of third and fourth-degree sexual offense would be
lesser included offenses that would merge for purpose of sentencing,
unless one could show independent acts.

**6.** Maryland courts use the "required evidence test" to determine lesser
included offenses. *See Williams v. State,* 323 Md. 312, 316, 593 A.2d
671 (1991) (citations omitted). An offense is considered a lesser includ-
ed offense when "all of the elements of the lesser included offense [are]
included in the greater offense." *Bowers,* 349 Md. at 722, 709 A.2d
1255 (citing *Hagans,* 316 Md. at 450, 559 A.2d 792).

**7.** The required evidence test was set forth in *Blockburger,* 284 U.S. at
299, 52 S.Ct. 180.

solely on the basis of sexual offense in some degree. *Id.* at 708, 542 A.2d 373.

The precedential value of *Nightingale* was called into question when the Legislature overruled its holding by enacting 1990 Md. Laws ch. 604. *Adams, supra,* 86 Md.App. at 387–88, 586 A.2d 810. However, the underlying rationale set forth in *Nightingale* is still "in full effect." *Id.* As such, we examine *Vogel v. State,* 76 Md.App. 56, 543 A.2d 398 (1988), to further explore whether sexual offense in the third and fourth-degree are lesser included offenses of sexual abuse of a minor.

In *Vogel,* the defendant, who was more than four years older than the victim, was convicted of sexual offense in the third-degree after he engaged in sexual contact with a fourteen year old. *Id.* at 67, 543 A.2d 398. The defendant was also convicted of child abuse because he was responsible for temporary care of the minor and abused that minor by committing the above mentioned third-degree sexual offense. *Id.* The *Vogel* Court applied the rationale set forth in *Nightingale* and explained that "sexual offense in the third-degree was a required element of child abuse and the conviction for sexual offense should, therefore, have merged into the conviction for child abuse." *Id.*

In the present case, appellant, who was between sixty and sixty-one years old during the commission of the alleged acts, was charged with sexual offense in the third-degree because he engaged in sexual acts with S.B., who was thirteen or fourteen at the time. He was also charged with sexual abuse of a minor because he had supervision of S.B. and allegedly committed the aforementioned third-degree sexual offense while supervising S.B. As such, sexual offense in the third-degree was a necessary element of sexual abuse of a minor. That, however, does not mean that appellant was entitled to instructions for third and fourth-degree sexual offense. The fact that sexual offense in the third-degree was a necessary element of sexual abuse of a minor merely illustrates that had appellant objected to the circuit court entering *nolle prosequi* as to the third-degree sexual offense charges,

sexual offense in third-degree could have merged into sexual abuse of a minor.

In the end, we think it is necessary to revisit *Hagans, supra,* 316 Md. at 455, 559 A.2d 792, and analyze the following holding:

> [W]here the State enters a nolle prosequi as to an uncharged lesser included offense, or where the charging document is drawn so as necessarily to exclude the lesser included offense, it would obviously be inappropriate to submit the lesser included offense to the jury, except to the extent that the defendant desires and is entitled to have it submitted under the principles recently set forth in *Hook v. State, supra.*

*Hagans* illustrates that appellant was not entitled instructions on the uncharged offenses of third and fourth-degree sexual offense because, as mentioned earlier, he was not entitled to those instructions under the principles of *Hook.* As such, the circuit court did not err when it refused to provide the jury with instructions for sexual offense in the third and fourth-degree.

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

